Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, March 31, 2011 3:47:34 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| MATTHEW D. PERKS and ) | |
| JENNIFER A. PERKS, ) | |
| ) | |
| Debtors. ) | Case No. 09-1469 |
| _____ ) | |
| ) | |
| MATTHEW D. PERKS and ) | |
| JENNIFER A. PERKS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. Proc. No. 10-32 |
| ) | |
| ACCESS NATIONAL MORTGAGE ) | |
| CORP., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Matthew and Jennifer Perks (the "Plaintiffs") claim that BAC Home Loans Servicing, LP ("BAC"),[1] violated the Truth in Lending Act ("TILA"), codified at 15 U.S.C. §§ 1601 et seq., by not providing each of them with two paper copies of the Notice of Right to Cancel their home loan with BAC and not responding to the Plaintiffs' June 8, 2009 letter requesting its rescission.

For the reasons stated herein, the court will deny the relief requested by the Plaintiffs.

---

[1] BAC Home Loans Servicing, LP, is the true party in interest in this proceeding as successor in interest to Access National Mortgage Corporation, the defendant identified in the Plaintiffs' complaint.

1

## I. BACKGROUND

In October 2007, the Plaintiffs obtained a loan from BAC to refinance the purchase of the their principal residence located at 314 N. Teal Rd., Martinsburg, West Virginia. At the time of the refinance, Mr. Perks was a commercial loan officer and Mrs. Perks worked in the residential mortgage business. An independent agent, not employed by BAC, conducted the closing regarding the refinance loan. At the loan closing, which occurred at the Plaintiffs' principal residence, the Plaintiffs received a packet of documents outlining the terms of the loan and the Plaintiffs' rights. Among the documents received were at least two copies of a Notice of Right to Cancel.

In 2008, the Plaintiffs moved to Wheeling, West Virginia. In September 2008, the Plaintiffs stopped making payments to BAC. In June 2009, the Plaintiffs unsuccessfully attempted a short sale of the Martinsburg property. Subsequently, the Plaintiffs consulted with bankruptcy counsel, who, as part of his representation, directed them to bring their loan documents from BAC to him for review. Based on that review, the Plaintiffs determined they could rescind BAC's loan; thus, the Plaintiffs mailed their letter of rescission to BAC on June 8, 2009. On June 30, 2009, the Plaintiffs filed their Chapter 13 Voluntary Petition.

## II. DISCUSSION

The Plaintiffs contend that TILA provides borrowers with an automatic unqualified right of rescission, and BAC violated TILA by not responding to the Plaintiffs' request of rescission. BAC alleges that TILA does not provide an automatic unqualified right of rescission but simply provides the mechanism by which borrowers can request rescission. At the heart of this dispute is whether the Plaintiffs received the required number of notices of the right to rescind, and if they did not, whether BAC violated TILA by not responding to the Plaintiffs' request of rescission. The receipt of the required number of notices is important as a threshold matter because "when a lender does not give a consumer . . . notice of the right to rescind, the consumer's right to rescind is extended from a three-day period to a three-year period." *Byron v. EMC Mortg. Corp.*, Case No. 3:09-CV-197-HEH, 2009 U.S. Dist. LEXIS 69589 at *6 (E.D.Va August 10, 2009) (citing 15 U.S.C. § 1635(f)). Here, the notice of recission provided by the Plaintiffs to BAC was beyond the three-day period following the loan closing date of October 25, 2007. Thus, in order to establish a timely recission, the Plaintiffs must demonstrate a defect in the process observed by BAC regarding the notice of the right to cancel that

2

would extend the period within which recission could be exercised.

The Plaintiffs contend that they did not receive the required number of notices regarding their right to cancel. Based on the language of 12 C.F.R. § 226.23(b)(1), the Plaintiffs state that they *each* were entitled to two such notices – for a total of four.[2] The Plaintiffs allege, however, that they each only received one notice – for a total of two. On this basis, the Plaintiffs contend that they had a right to rescind their loan as of June 30, 2009.

During their testimony, the Plaintiffs acknowledged receiving at least one copy each of the Notice of Right to Cancel and executing a receipt for two copies each of the Notice form. The sole evidence offered by them in support of their contention that they failed to receive the required number of cancellation notices was their testimony that following the closing at their residence they gathered all of the documents they were provided with, placed them in a binder, and put the binder in a file drawer for storage. The binder remained there undisturbed, according to the Plaintiffs, until they were asked by their attorney to produce the closing documents. Only upon examination of the documents at that time was it discovered that the package contained just one copy each of the Notice of Right to Cancel. Moreover, the Plaintiffs testified that the set of documents admitted into evidence as Plaintiff's Exhibit 1 was the complete set of documents received at the loan closing.

The closing agent, who conducted hundreds of closings over an eight year period prior to the closing in this case on October 25, 2007, testified that she always followed all applicable procedures and provided the relevant number of copies of all documents to borrowers at closings, including two copies each of the notice to rescind.[3] More specifically, the closing agent offered convincing testimony that, if the required number of copies were not present in the closing packet, she would have stopped the closing to make additional copies.

---

[2]The regulation identifies the required notice as one relating to the "right to rescind," not the right to cancel. However, the notices provided to the Plaintiffs in this case were captioned "Notice of Right to Cancel." (Defendant's Exhibits 1 and 3). Neither party has raised an issue regarding this discrepancy. Moreover, the court perceives no meaningful difference and, for purposes of this opinion, uses the phrases interchangeably.

[3]Of note also is that the closing agent is, in the court's view, a disinterested witness. She no longer works in the real estate business. She is employed now as a certified nurse assistant in a hospice facility. Thus, she has no stake in the outcome of the present proceeding.

3

Also, BAC produced a copy of the U.S. Department of Housing and Urban Development ("HUD") Settlement Statement signed by the Plaintiffs at closing, which should have been tendered to them in their home at the closing of the loan, but which was not in their purportedly complete set of closing documents introduced into evidence. The Plaintiffs contend, post-trial, that the absence of the HUD Settlement Statement is additional evidence of BAC's failure to provide copies of all the required documents owed to them and not the Plaintiffs' failure to maintain the integrity of the package of closing documents that they kept. However, the subject of the missing HUD Settlement Statement was not raised by the Plaintiffs; in other words, they never claimed it was another item that BAC failed to provide to them at closing. It was only during cross-examination of Mr. Perks that the missing HUD Settlement Statement came to light. Although the absence of the HUD Settlement Statement is not conclusive proof that the set of documents submitted as Plaintiffs' Exhibit 1 is not the complete set of documents received by the Plaintiffs at the closing, it weighs against a finding that Plaintiffs' Exhibit 1 is the complete set of documents actually received.

Finally, BAC produced signed acknowledgments from each of the Plaintiffs, acknowledging that each had received two copies of the Notice of Right to Cancel.[4] Of note is that neither of the Plaintiffs affirmatively testified that they did not receive the requisite number of notices. They merely presented evidence that suggested there was a lack of sufficient copies in the package of documents they preserved. However, there is no contest over the authenticity of their acknowledgments of receipt, nor is there any evidence to suggest that the acknowledgments were obtained through fraudulent or deceptive means.

Based on the evidence and testimony at trial, the court finds that the Plaintiffs were sophisticated borrowers based on their experience in the residential mortgage and commercial loan businesses. Under the circumstances of this case, the signatures of the Plaintiffs acknowledging receipt of two notices each should be given more, rather than less, meaning. Consequently, the court gives

---

[4] The court realizes that the signed acknowledgment of receipt of two copies each of the notice creates a rebuttable presumption that the Plaintiffs received the required number of copies. 15 U.S.C. § 1635(c). Here, the Plaintiffs successfully rebutted that presumption by their testimony regarding their preservation of the closing documents. However, the court's decision is based solely upon the weight of the evidence regarding the Plaintiffs' ultimate burden of proof after the presumption disappears.

preponderant weight to the Plaintiffs' signed acknowledgments that they each received two copies of the Notice of Right to Cancel. Additionally, the Plaintiffs failed to convince the court that the loan document package presented at trial constituted a complete set of the documents received at closing based on the fact that the package did not contain a copy of the HUD Settlement Statement signed by the Plaintiffs at the loan closing. These facts, when combined with the credible testimony of the loan closing officer that she would have provided each of the Plaintiffs with two copies of the Notice, leads the court to conclude that the Plaintiffs have failed to carry their burden of proof in showing that they only received only two – not four – copies of the Notice of Right to Cancel. In other words, based upon all of the noted factors, it is more likely than not that the Plaintiffs received the requisite number of copies.

Therefore, the Plaintiffs failed to prove, by a preponderance of the evidence, that they did not receive a total of four copies of the Notice of Right to Cancel.[5] Because the Plaintiffs failed to carry their burden, the attempted rescission outside the statutory three-day period was improper. Thus, BAC did not violate TILA by failing to respond to the Plaintiffs' request.

### III. CONCLUSION

For the reasons stated herein, the court will enter a separate order denying the relief requested by the Plaintiffs.

---

[5] *Smith v. Argent Mortg. Co., LLC*, Case No. 05-cv-2364-REB-BNB, 2007 WL 4105192 (D.Colo. November 14, 2007).